e. The United States Court of Appeals for the Fifth Circuit is now open according to the law. God save the United States and this honorable court. Good morning. Welcome to the Fifth Circuit Court of Appeals. We have three cases to be heard today. First case, Hutcheson v. Dallas County, Texas. Mr. Kida, if I'm pronouncing that right? Yes, sir. Okay. Thank you, your honors. Good morning and may it please the court. My name is Matthew Kida and I represent the appellants in this case, Nicole Hutcheson and Ruth Logan. As this court is aware, this case arises out of the death of Joseph Hutcheson on August 1st, 2015. He died shortly after being restrained by four Dallas County Sheriff's deputies in the lobby of the Dallas County Jail and the medical examiner's report concluded that his death was a homicide caused by physiologic stress associated with struggle and restraint. The appellants filed suit against the officers under section 1983 seeking damages. Excuse me, Mr. Kida, we've read the briefs and we know about all the procedural history, so why don't you go on into your legal points. Of course, you can refer back to the facts as you Thank you, your honor. Appellants respectfully submit that the district court erred when it granted the summary judgment to the individual defendants on the basis of qualified immunity and when it dismissed appellants claim against the county for failing to state a claim on which relief can be granted. Accordingly, we ask this court to reverse and remand the claims against the individual officers and order the district court to permit the limited discovery that appellants stated a claim on which relief can be granted under the Supreme Court's opinions in Monell v. New York and Canton v. Harris. Turning to my first argument, contend the district court erred when granting summary judgment to the officers because it did so without allowing appellants to pursue the limited discovery to which they were entitled under this court's holding in Lyon-Bolos v. Wilson, which came out in 1987. What particular showing did you make to obtain that discovery? What detailed list did you give and what justification did you give for why each item of discovery was needed? Your honor, in our motion for discovery, we identified the fact that the only information that we had about the events were a video provided by the county of the occurrence and information that we received through a FOIA request that we did on our own before we even commenced litigation. In the documents that we received, the witness statements from the officers and the people that were present, county employees that were present at the time, the names and contact information of all of the eyewitnesses that were not county employees were redacted. And because the video has no sound, which we identified in our motion, we contend that we were not able to sufficiently respond to the motion for summary judgment because as this court held in Darden v. City of Fort Worth, and frankly, even more recently, in Joseph v. Bartlett, summary judgment is not appropriate on a qualified immunity defense if there is a question of fact as to what actually happened. So specifically, again, what discovery did you request? We requested, excuse me, let me notice here for a second, specifically asked two interrogatories asking for the contact information of the eyewitnesses that was redacted. And we asked for any documents or witness statements that they may have provided to the county. And finally, we said, in the event that it becomes germane, could we possibly take the deposition of these witnesses, again, to find out what actually happened if such information was not in the witness statement? The court ruled that these requests were not narrowly tailored to the qualified immunity analysis and neither discovered. So the only information that the district court was able to consider when ruling on the summary judgment was the soundless video and the statements of the officers themselves, which of course is giving credence to the allegations or the evidence provided by the non-movement, excuse me, provided by the movement, as opposed to the non-movement having an opportunity to at least raise a genuine issue of material fact as to whether their description of what happened was actually correct. And we believe that was error because these responses were tailored. This is not a in advance and disturbing the government. In fact, as this court held in Boulos versus Wilson, which is one of the cases on which both the appellees and the district court rely, this court noted that discovery was permissible. And one of the reasons it was permissible was because the information that was being sought involved private citizens and eyewitnesses and wouldn't burden government employees at all. All we were asking for was non-redacted versions of reports and the identification of the people that actually saw what happened. And we really believe that that's essential here because without the sound, we don't really know what happened. I don't know how you can say that. The Supreme Court has talked about how revealing a video is even on summary judgment. What is there about what happened that would be revealed by audio or by other witness statements that isn't revealed by having a fact finder look at the video? You want to turn to the first part of your question. The Supreme Court's seminal holding on this issue is in Scott versus Harris. And in Scott versus Harris, the plaintiff was eventually killed in a high speed car accident. And the defense submitted a video as part of their summary judgment evidence showing that the decedent was driving absolutely recklessly at speeds of 100 miles an hour, threatening the lives of pedestrians, putting all their officers in dangers. And that video showed. And the plaintiff tried to create a genuine issue of material fact. Justice Scalia wrote this opinion. And he said, when you read this affidavit, it suggests that the guy was trying to take his driver's test. And so in Scott versus Harris, the court said that when the evidence on the video plainly contradicts the statements in the affidavit, there's no genuine issue of material fact. In this case, however, what we see on the video is Mr. Hutchison entering the lobby, sitting down on a bench, getting up and approaching an unarmed man. And at some point in time, he stands up and walks through the lobby of the jail cell, excuse me, the jail lobby again, and is immediately brought down and tackled by by four officers who subsequently kneel on his back and restrain him for a significant amount of time. Now, that's that's very different from Scott versus Harris, because unlike someone who is fleeing the scene in a high speed car chase and presenting, you know, and it's obvious that they're presenting a danger to themselves or others, whether private citizens or law enforcement officers. In this case, there's really no telling what Mr. Hutchison was doing when he was in the jail. Well, you claim that there's a fact issue regarding whether Mr. Hutchison resisted. Why isn't that plainly shown by the video that's already in the record, whether he resisted or did not resist? Well, Your Honor, I think that even if there was evidence in the video that he was resisting being hogtied or restrained in the manner that he was, you know, there's a dispute over whether he was hogtied or not. This court recently said in Joseph versus Bartlett that some degree of resistance can be expected when when officers physically detain a suspect. But that doesn't necessarily mean that they're trying to escape or trying to inflict harm on the officer. And because in Joseph versus Bartlett, this court found that the video was not conclusive to suggest that the force that the officers used was necessary, that the case should be remanded back to the district court so that a jury could make its determination of whether the officer's force was appropriate. And again, that Justice Willett wrote that, Judge Willett wrote that opinion. And he noted, you know, the plaintiff may ultimately lose a trial. But at the end of the day, just like in Darden versus City of Fort Worth or Joseph versus Bartlett, if there's a question as to what actually happened, summary judgment is not appropriate. So if when Mr. Hutchison was tackled by the officers and immediately started screaming, for example, I can't breathe, I can't etc. I think that would be a fact that the jury could consider as to whether the force was excessive. Moreover, when Mr. Hutchison was walking through the jail lobby, the things that he was saying to the people that were on the benches or the people that he approached in the lobby, if he walked in there and said, I'm going to kill all of you, okay, that's one factor that could say perhaps the officer's reaction was appropriate. If he was saying, I need help, can you help me, and was simply not posing a threat to anyone, was unarmed, was not trying to flee, was not doing any of the things that this court has held repeatedly constitute the use of excessive force, then that's a fact question for the jury. But denying us the opportunity to even ask other eyewitnesses what actually happened is extraordinarily prejudicial, because we simply couldn't rebut that we couldn't meet our burden because we didn't have any evidence whatsoever. All we had was the statements of the officers, which, you know, I'm certainly not going to impugn their credibility at all, but that's their evidence. We don't have anything. And we, the court, this court and the Supreme Court have held that we're entitled to limited discovery. And again, that comes out of the lion bolos test. And it's a three part test is, is the defendants entitled to immunity? Does it turn partially on a factual question? I think we meet that here. The second element is, is the district court unable to rule on the immunity defense without the clarification of these facts? As I just explained, I think we meet that as well. And then the third is, is the order narrowly tailored to only uncover facts necessary to rule on the immunity defense. And I think that is definitely the case here, because our only claim from Monell Harris liability arises out of failure to train. Now, there's no way that any of these eyewitnesses are going to provide that dispositive information on whether the county of Dallas trained its officers properly. It can provide background information as to what happened. But the usual course of these proceedings is that the qualified immunity claims are dealt with first. Limited discovery is allowed. The Monell claim sits on the side. And under the Supreme Court, if that immunity issue is resolved, then we turn to see whether there's a possible Monell claim. Because for obvious reasons, if the court or the jury concludes that the officers didn't commit a constitutional violation, it doesn't really matter whether the municipality engaged in unconstitutional conduct, if no unconstitutional conduct was committed by its employees. But here, the district court concluded that we had failed to state a claim on which relief could be granted. They actually addressed the merits of the Monell claim based solely on our pleadings. And I'll concede this court, I don't believe in the past 30 years, has affirmed a jury verdict or overruled a summary judgment on a single incident exception failure to train claim. But that doesn't mean the claim doesn't exist. And I think if you look at the allegations in our first amended complaint, which is in the record, I believe it begins at Record on Appeal, page 261. We have a 19 page complaint here, the details exactly why we believe that the training procedures that the county used had been reasonable, the incident would not have happened. Now granted, it's speculative at this point, because we haven't had the opportunity for any discovery. And as we noted in our brief to both the district court and to this court, a Monell claim is very different than a claim against an officer who has a qualified immunity defense, because municipalities don't have that defense. And we pointed out Judge Ellison's opinion down in the Southern District of Texas, in which he outlined all of the reasons why the pleading standard should be reviewed much more liberally in favor of the plaintiff when they're pursuing claims against municipality, because obviously until there's a time to conduct some discovery and figure out what actually happened, the average lay person doesn't know or doesn't have access to the policy or internal documents or conversations. Simply making the allegation is enough. And the policy reason behind that, as Judge Ellison very keenly pointed out, is that there is no risk when making these allegations against the municipality of pulling officers off the force or taking people that should be serving the public and pulling them off of their jobs and putting them in conference rooms and courtrooms. So at the pleading stage, anyway, we alleged a claim, Canton versus Harris allows for a Monell claim based on failure to even in Brown versus Brown County, this court acknowledged that there are certain circumstances where this is a valid claim. For the district court to conclude that we failed to state a claim on which relief could be granted, we respectfully submit was not only premature, but it's just simply erroneous. Such a claim does exist. Whether we can ultimately prove it is the question. But because we were denied the discovery to pursue our claims against the officers, once those claims against the officers went away, so necessarily did our claims against the city or against the county. I see that my time is up. Unless you have other questions, I'll save mine for rebuttal. Yes. Thank you, Mr. Kitty. You save time for rebuttal. Mr. Sweat. Good morning. May it please the court. I am assistant Dallas County District Attorney Jason Shouette. I represent the Apple leaves Dallas County Fernando Reyes, Trenton Smith, Elvin Hayes and Betty Stevens. The appellees asked the court to affirm the trial court's judgment. The appellants offer four main arguments. First, that the district court erred in denying excuse me, granting the individual defendants qualified immunity. Relatedly, that the district court erred in denying the discovery that the appellant sought. Third, that the district court erred in county claims before the individual defendant claims. And fourth, that the district court erred by determining that the appellants failed to state a viable claim against the county. I will address those arguments in a slightly different order. First, that there is no error to resolve the county claims before the individual claims. Second, that the Monell claims against Dallas County were not facially plausible. That the surveillance video was sufficient to show that there is no genuine issue of fact on qualified immunity. And fourth, that there was no error in denying the appellants overly broad discovery requests per this court's precedence and Liam Bulos versus Wilson and its progeny. First, the appellants argue that it was reversible error to resolve the Monell claims before the claims against the individuals. The argument relies upon an entirely misplaced reading of the city of Los Angeles versus Heller. Heller and its deprivation of federal rights. I am unable, however, to find a single case that supports the appellants fanciful argument that the court must address the arguments in the order of individual claims. First, the district court dismissed the claims against the county because the appellants did not plead sufficient allegations on a custom or policy of a failure to train. The dismissal had nothing to do whatsoever with the determination that there is no constitutional harm or that there was a constitutional harm, but that the individual defendants were entitled to qualified immunity, which is the subject matter of the Heller opinion. The district court's termination was based entirely upon the facial insufficiency of the Monell allegations against the county. For that reason, the district court's opinion properly did not reference Heller, either in setting out the legal standards or no liability or in the application of those standards to this case. And quite frankly, I in my 20 years of practice frequently see, as I'm sure the court has, district courts dismiss on 12 B six grounds claims against governmental entities, leaving claims against the individuals for summary judgment or for trial. Next, the Monell failed to train pleadings were in fact, facially deficient. The settled rule is that a plaintiff is usually required to plead a pattern of similar violations. Now, the appellants concede that they did not allege a pattern of similar violations. They conceded that both in their response to the motion to dismiss that's record three 99 and in their brief on page 31 that leaves the appellants with what's called the single incident exception theory. Not for that theory, the plaintiff, such as these appellants must allege factual content sufficient to create a reasonable inference that the training provided was so inadequate that the policymaker could predict that the specific harm alleged would occur and further that not merely more or different training would have prevented the specific harm is alleged. Now, per their brief, the appellants were required. They say to allege back to support the inference that the training was so inadequate as to amount to no training at all. That's Anderson versus Marshall County. The single incident exception usually requires a complete failure to train. As a matter of fact, Judge Higginbotham so said in the state of Davis versus extra McCully versus city of North Hills. The single incident exception is generally reserved for there is no training whatsoever. And that is what was written by Judge Smith in Pena versus city of Rio Grande City. This court held in Littell versus Houston Independent School District, authored by Judge Higginbotham, that if you allege that there was no training whatsoever, then you have a facially plausible claim. So why was the district court correct that the appellants failed to meet their pleading burden? Well, the appellants did not allege that the county provided no training in the relevant areas. Indeed, they said that there was training, but that it was deficient. Again, if they had alleged no training, the pleadings would have been sufficient under Littell. They don't allege facts to support that the county provided training that quote amounted to no training at all, as the court said in Marshall versus Anderson County. Instead, they propose hypotheticals. What ifs as to whether the training was insufficient? Critically, I think very critically, the appellants plead in paragraph 5.24 of their complaint, quote, The fact that this incident occurred at all demonstrates the obvious need for Dallas County to provide its officers with additional or different training. However, this court held in Littell that an allegation that more or different training would have prevented the harm alleged is insufficient as a matter of law to plead a viable claim. And that is precisely what has happened here. The appellants pleaded in their complaint that there was training and that the incident would not have happened if there was more different training. And as a matter of law in this court's precedence, that is facially insufficient. I would also take note that unlike the suggestion, the brief that the appellants were not given an opportunity to amend, they were they were given an opportunity to amend. There was a hearing in front of the district court. There was a oral request made by the appellants for leave to amend. It was unopposed. The appellants filed an amended complaint. Moreover, in its order, the district court even reminded plaintiffs of what they had to plead in order to plead a sufficient claim for these reasons. And I would also add that a party cannot remedy a deficient complaint just by conditionally asking for leave to amend in response to a motion to dismiss. This court said so in Babb versus Dorman and in Spiller versus City of Texas City Police Department. Therefore, the district court did not abuse its discretion by denying yet another amendment. Next, the district court did not err in determining that the appellants failed to overcome qualified immunity. At the outset, appellees point out that appellants attempt throughout their brief to flip the burden of proof on qualified immunity. In their brief on pages nine and 10, the appellants posit that the individuals never filed on summary judgment on qualified immunity and that the appellees argued that the evidence conclusively establishes an absent material fact. In other words, appellants argued that the individual defendants failed to argue that the evidence established their right to qualified immunity. But that's not the settled rule. In Cass versus City of Abilene, this court recently said a good faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available. Now, appellees did state what the basis of their qualified immunity defense was. To argue otherwise is willful nonsense. The individual defendants motion to dismiss, which was later converted to a summary judgment by the district court, clearly stated the basis for the qualified immunity defense. And that can be found in record pages 295 to 303. District court converted that motion to dismiss because the individual defendants provided an item of evidence that was not attached to the complaint, the surveillance recording, which was admitted into the record without opposition. Now, if the motion to dismiss had originally been filed as a qualified immunity summary judgment, appellants still would have had the burden of proof to disprove the entitlement to qualified immunity. The appellants also say that the district court granted the summary judgment the converted summary judgment for grounds not stated in the summary judgment. But the district court, in fact, granted the summary judgment motion for the exact grounds stated in the motion that the force used was objectively reasonable. Now, the defense proffered Darden versus City of Fort Worth as the controlling law in this case as to whether the officers, the individuals used excessive force. But countless Supreme Court and Fifth Circuit decisions warned about the common error of finding controlling law at too high a level of generality. Here, the appellants attempt to do exactly that by defining the constitutional violation simply as, quote, a police officer uses excessive force when the officer strikes, punches or violently slams a suspect who is not resisting arrest. That's the appellant's brief at 10. It is thus highly important that the facts of Hutchinson's account, for example, in Darden, there was conflicting testimony, which is not true here. The video was intermittent. Key interactions were not recorded. A shirt was ripped off Darden's back. There were attempts by Darden to comply with verbal commands. Darden choked. He was punched and kicked in the face. He was tased, I think, twice. A chokehold was applied and there was extended pressing of his face and body into the ground and then an obvious denial of medical care. In other words, the force used in Darden was strikingly different from the force used in this case. Now, the absence of sound in the video does not create a general, excuse me, a material issue of a genuine fact dispute. The appellants fail to any material fact dispute about what happened that occurred in the audio that the audio could confirm or refute. Again, the appellants are attempting to flip the proof burden, stating that quote, the silent video fails to conclusively establish that the individual appellee's use of force on Joseph was constitutionally permitted or objectively unreasonable. That's their brief at 11. Instead, the appellants are asking this court as they asked the district court to assume that the audio would create some fact issue unknown about mere speculations and then they couch speculation as a genuine dispute about material facts. But numerous facts, they say, are absolutely disputed because the video has no sound. Well, that's disingenuous. They're not disputing what took place, and that's not the same as a genuine fact dispute. It is noteworthy that the Supreme Court case that made the video so central to summary judgment practice, Scott B. Harris was a silent dash cam video taken by a police vehicle. And in that connection, as this court observed in Antoine versus First Student Inc, a district court must quote resolve factual controversies in favor of That is when both parties have submitted evidence of contradictory facts. The appellants here utterly failed to cross that threshold, as was their burden. Thus, the district court did not err in finding that the individual defendants acted reasonably, which could be observed by watching the video. I would also take note of the fact that the video does show something very interesting, and that is that when Joseph walks into that lobby, just about wherever he goes, causes people to scatter. This is not someone who just calmly walked in and everything was okay. You could tell, anyone can tell by looking at that video, that Mr. Joseph was creating such, his presence, his demeanor, his actions were so disturbing that the common citizens in that lobby tried to get away from him. Very definitely were trying get away from him. The last issue I will cover is that where I think the court began, which is whether the district court erred in denying the appellants qualified immunity discovery motion. Obviously, the appellants contend that the district court erred by denying that discovery motion, but this court's precedents are clear. Under the qualified immunity regime, any discovery must be first narrowly tailored to uncover only facts needed for the district court to resolve the immunity issue. And secondly, that the immunity issue turns at least partially on a fact issue, and that the district court is unable to rule on the immunity defense without further factual clarity. That's what this court held in Lianbilos. The district court correctly apprehended that the improper and open-ended nature of the appellants discovery did not comply with this court's precedents. The appellants did not present an actual fact dispute in their complaint. The appellants did not present an actual fact dispute in their motion for discovery. Instead, appellants discovery motion asserts that, quote, a genuine dispute as to the material and operative facts in this case exists, end quote, but they don't identify that dispute. It was, as the district court apprehended, a fishing expedition. In fact, appellants admit that the purpose of appellants undersigned counsel can provide guidance, excuse me, appropriate guidance to their clients after learning whether defense version of events can be corroborated or contradicted. Well, discovery in a qualified immunity setting to provide guidance to your clients is not narrowly tailored discovery that will assist the district court in resolving a specific fact dispute. It's the furthest thing from it. It's the antithesis of the proper purpose of discovery in the qualified immunity context. Further, it is clear from appellants requests that they were attempting to uncover, as the district court noted, any facts as opposed to specific facts that might help support their speculations, and I repeat, speculations about what occurred. Further still, this court has held that a district court must, quote, identify any questions of fact it needs to resolve before it would be able to determine whether the defendants are entitled to qualified immunity. That's an opinion authored by Judge Dennis Zapata versus Melson in 2014. Finally, this court held in Zanets versus Seale, I believe that was a unpublished procurium opinion, that, quote, even a limited discovery order does not satisfy the second step if the district court does not properly identify any questions of fact it needs to resolve before it would be able to determine whether defendants are entitled to immunity. Well, here that didn't happen. The district court did not first do what this court's precedent clearly requires, which is to state that upon review of the complaint and any Rule seven a reply that the a pleading which first surmounts the I'm sorry I need to rephrase that the pleadings first, if true, would state a constitutional violation. And then, secondly, the district court is to identify the factual disputes that need to be resolved so that the discovery can be tuned that is narrowly tailored to uncover the facts that the district court decides that it needs to have resolved before it can rule. I don't mean to intend Judge Horan's order. I think that his order is a very commonplace one, but it did not comply with this court's precedents. There was no specific statement, and this court has ruled that the statement must be explicit that the pleadings overcome qualified immunity. And secondly, the court did not identify a specific fact dispute that qualified immunity discovery would assist the court in resolving. For these reasons, the district court did not abuse its discretion by denying appellants motion for discovery. And for all of these reasons, appellants asked the court to affirm the district court's judgment. In all respects, I have a little time left, and I have nothing further unless the court has a motion. All right. Thank you, Mr. Schwedt. Mr. Akita, you say time for rebuttal. Thank you, Your Honor. Your Honor, I'd like to address each of the points that my good friend, Mr. Schwedt, made. He did correctly note that the case on which we relied most heavily in our briefing was the Darden case. But I think it's worth noting that the Darden case was brought up just on November 20th of this year, so it was not in my briefing. It wasn't out yet. But an important piece from that opinion, and if you don't mind if I read it verbatim, Judge Willett wrote, Darden announced no new rule. It reaffirmed an already existing one. Darden repeated what has long been established in our circuit. Officers engage in excessive force when they physically strike a suspect who is not resisting arrest. For us to say that the rule wasn't clearly established in 2017, despite the fact that Darden said it was clearly established in 2013, would flout precedent and our rule of orderliness. These events took place in 2015. So the rule, as announced two weeks ago in this circuit, is if that Joseph Hutchinson was not resisting arrest, you cannot physically strike him. The video clearly shows that he was physically stricken. So the idea that somehow this video is dispositive, that no violation took place, or that the officers were justified in doing so, respectfully disagree with my learned opposing counsel. The other thing that I would like to point out is that he relied heavily on a couple of cases in which pleading standards for failure to train claims, excuse me, in which failure to train claims were dismissed. Specifically, he noted Cass versus City of Abilene and McCauley versus City of North Richland Hills. The important part about those cases is they were both summary judgment cases. They were not dismissed on 12b6 grounds. And that's exactly what we're asking for here. Allow us to at least develop these cases. If we can get by qualified immunity against the individual defendants, allow us to pursue discovery. You know, Mr. Shweta accused our allegations of being speculative, but we're not asking this court to assume. We're not saying we're entitled to a presumption. We're simply saying that we pleaded a cause of action that exists. He also referred to your opinion, Judge Smith, in the Pena case. And in that case, it was a 12b6 motion that was sustained on appeal. But in that case, that case complained about taser use. And for whatever reason, the plaintiffs in that case admitted that the officers had received taser training. And in our case, we've made no such admission. Now, every officer receives some training. You can't be an officer without going to the police academy. So to make that the threshold standard would simply, it would eviscerate the cause of action in the first place. What we alleged in our complaint and on paragraphs, well, pages 10 through 14 of our complaint, were what we believe are the standards of Osaganda and what the Dallas County requires of its officers. And also alleged the existence of a authoritative source for what kind of training needs to be provided. And then in our allegations on failure to train, we alleged that if these policies weren't followed, it could be because of a failure to train. Now, again, this isn't a basis of our allegations, which again, might be wiped out on summary judgment if we're not able to prove them. But to say that a failure to train claim doesn't exist, even under the single incident exception, I mean, that's just not correct. And if our allegations were not specific enough as to show why the actions in this case were so egregious, I believe we'd be entitled to an opportunity to replead them. The standard is, have you alleged your best case? Now, clearly we have Supreme Court and Fifth Circuit case law that acknowledges this is a cause of action. If there's simply a factual detail that could have been included. And remember, just like Judge Ellison said, our knowledge of the factual details is inherently limited, simply by the nature that we don't have the internal information beforehand. And I see my time is almost up, but in this particular case, the only witness that we could have that could support our argument, unfortunately, is deceased. And that's Mr. Hutchinson. And we are completely hamstrung on both claims, because we can't get the information about who the witnesses were. And obviously, we can't get any information about the county until we survive summary judgment against the officers. I see my time is up. If you have any additional questions, be glad to answer them. Otherwise, I'll rest on my grace. Thank you, Mr. Keita. Your case is under submission. Thank you, Your Honors. Thank you, Your Honors.